IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
WEST PALM BEACH DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br>    v.<br><br>LGM PHARMA LLC, a limited liability company,<br><br>    and<br><br>PRASAD RAJE and SHAILESH VENGURLEKAR, individuals,<br><br>    Defendants. | |

**COMPLAINT FOR PERMANENT INJUNCTION**

The United States of America, Plaintiff, by and through its undersigned counsel, and on behalf of the United States Food and Drug Administration ("FDA"), respectfully represents as follows:

1.  This statutory injunction proceeding is brought under the Federal Food, Drug, and Cosmetic Act (the "Act" or the "FDCA"), 21 U.S.C. § 332(a), to permanently enjoin and restrain LGM Pharma LLC ("LGM Pharma"), a limited liability company, and Prasad Raje and Shailesh Vengurlekar, individuals (collectively, "Defendants") from: (a) violating 21 U.S.C. § 331(a) by introducing or causing to be introduced, or delivering or causing to be delivered for introduction, into interstate commerce, articles of drug that are adulterated within the meaning of 21 U.S.C. § 351(a)(2)(B); and (b) violating 21 U.S.C. § 331(k) by causing articles of drug to become

adulterated within the meaning of 21 U.S.C. § 351(a)(2)(B), while such drugs are held for sale after shipment of one or more of their components in interstate commerce.

## JURISDICTION AND VENUE

2. This Court has jurisdiction over the subject matter and all parties to this action under 28 U.S.C. §§ 1331, 1337, and 1345, and 21 U.S.C. § 332(a).

3. Venue in this District is proper under 28 U.S.C. § 1391(b) and (c).

## DEFENDANTS

4. Defendant LGM Pharma is a Delaware limited liability company.  LGM Pharma's corporate headquarters office is located in Boca Raton, Florida (the "Headquarters Facility"), within the jurisdiction of this Court.

5. LGM Pharma is engaged in the importation and distribution of drugs, including active pharmaceutical ingredients ("API"), manufactured primarily by companies operating outside the United States.  API are used in the manufacture of finished drug products.  LGM Pharma receives API at, and distributes API from, a facility located in Erlanger, Kentucky (the "Kentucky Facility").

6. Defendant Prasad S. Raje is the Chief Executive Officer of LGM Pharma and a part owner of the company.  Defendant Raje is responsible for all aspects of the company's operations, including the LGM Pharma Kentucky Facility, capital decisions, employee hiring and firing, with input from human resources personnel, and senior management supervision. Defendant Raje participated in FDA's 2022 inspections of the Headquarters and Kentucky Facilities.  FDA issued two Lists of Inspectional Observations ("FDA Form 483"), which detailed the FDA investigators' inspectional observations at the Kentucky and Headquarters Facilities, to Mr. Raje, as the most responsible person at the company.

7. Since May 2019, Defendant Shailesh Vengurlekar has been the Senior Vice President of Quality and Regulatory Affairs at LGM Pharma and has an ownership stake in the company. Mr. Vengurlekar reports directly to Mr. Raje and is responsible for the quality team overseeing LGM Pharma's API supply chain. He also has authority over hiring and firing decisions, with human resources input, as well as certain financial decisions, with senior leadership team input.

8. During their regular course of business, Defendants receive, hold, and distribute articles of drug, within the meaning of 21 U.S.C. § 321(g)(1), in interstate commerce, including thousands of API, imported from hundreds of suppliers located primarily outside the United States, and that are further distributed by LGM Pharma to its customers located throughout the United States.

**DEFENDANTS UNLAWFULLY DISTRIBUTE ADULTERATED DRUGS**

9. Products that are intended "for use in the diagnosis, cure, mitigation, treatment, or prevention of disease" or "to affect the structure or any function of the body" in humans are drugs within the meaning of 21 U.S.C. § 321(g)(1)(B) and (C). In addition, "articles intended for use as a component of any article specified" in 21 U.S.C. § 321(g)(1)(B) and (C) are also drugs. 21 U.S.C. § 321(g)(1)(D).

10. The API that Defendants receive, hold, and distribute to customers are intended to be incorporated as a component of finished drug products. Defendants' API are drugs under the Act, because they are intended to be used as components of articles that are intended to cure, mitigate, treat, or prevent disease, or to affect the structure or function of the body.

11. The Act requires drugs to be manufactured, processed, packed, and held in accordance with current good manufacturing practice ("CGMP"). 21 U.S.C. § 351(a)(2)(B). The

Act deems a drug adulterated if "the methods used in, or the facilities or controls used for, its manufacture, processing, packing, or holding do not conform to or are not operated or administered in conformity with [CGMP] to assure that [it] meets the requirements of [the] Act as to safety and has the identity and strength, and meets the quality and purity characteristics, which it purports or is represented to possess," regardless of whether the drug is actually defective in some way.

12. FDA inspected the LGM Pharma Kentucky and Headquarters Facilities during March and April 2022 (the "2022 Inspections"). These inspections revealed multiple instances in which Defendants failed to adhere to CGMP for receiving, holding, and distributing drugs. Following the 2022 Inspections, FDA issued FDA Forms 483 enumerating multiple observations of quality control issues that pose a serious and on-going risk to the public. Moreover, as set forth in greater detail below, many of the CGMP violations observed during the 2022 Inspections are similar to violations observed previously during FDA's 2018 inspection of the Kentucky Facility.

13. Defendants' significant deviations from CGMP observed during the 2022 Inspections include, but are not limited to, the following:

    A. Failure to adequately investigate and resolve quality related complaints. For example, a customer of LGM Pharma reported out-of-specification ("OOS") test results concerning unidentified impurities in cromolyn sodium, a drug used to treat bronchial asthma and certain allergic conditions, it had purchased from LGM Pharma. LGM Pharma did not quarantine remaining product from the compromised lot while it investigated the OOS complaint, in violation of its own Standard Operating Procedures ("SOPs"). Instead, LGM shipped quantities of the remaining API to two additional customers without informing them of the OOS results until the 2022 Inspections were underway, more than a year after LGM Pharma was apprised of the

OOS test results.  LGM Pharma's investigation into this issue was inadequate, and not compliant with its SOPs, in that LGM Pharma did not assess the scope of the issue or its risk, or properly document its investigation.  Similarly, LGM Pharma failed to take appropriate action in conformity with its SOPs when it learned of multiple OOS test results relating to impurities/potential low potency for multiple lots of estriol, an estrogen hormone, that LGM Pharma purchased from a Chinese supplier and distributed to six different customers in the U.S.

        B.       Failure to accurately perform quality control measures.  For example, LGM Pharma's quality unit reviewed and approved a checklist used to determine whether a batch of sodium thiosulfate API met its requirements for distribution in the U.S. that contained significant errors.

        C.       Failure to qualify API suppliers in accordance with established SOPs.  For example, LGM Pharma ordered and received hundreds of API from multiple suppliers between late 2018 and early 2022 that were not qualified and approved pursuant to LGM Pharma's own SOPs.  Moreover, inconsistent with CGMP as well as LGM Pharma's SOPs, LGM Pharma's finance department oversees the relationships and transactions the company has with many of its API suppliers rather than its quality personnel.

        D.       Failure to establish adequate SOPs for distribution of products after manufacturer disqualification and to follow existing SOPs for distribution of such product.  LGM Pharma's vendor qualification SOP is inadequate because, for example, it allows the company to distribute inventory from a vendor that has been disqualified without requiring the company to undertake an assessment of the product's quality and risk prior to distribution.  Moreover, LGM Pharma failed to follow its existing SOPs when it distributed multiple shipments of API inventory

from a supplier after LGM Pharma had disqualified the supplier without any written justification for the distribution, as required by the company's vendor qualification SOPs.

    E. Failure to follow established SOPs for registering API manufacturers with FDA.  For example, LGM Pharma registered foreign suppliers with FDA without the supplier's knowledge and authorization, and with inaccurate information, including incorrect supplier contact information.

    F. Failure to properly document investigations into deviations and complaints. LGM Pharma's investigation documentation is deficient in numerous respects, including but not limited to, that it lacks significant details such as dates of discovery, investigation start dates, product impact assessments, and product dispositions.

14. Defendants violated 21 U.S.C. § 331(a) by introducing and causing to be introduced, or delivering and causing to be delivered for introduction, into interstate commerce articles of drug that were adulterated within the meaning of 21 U.S.C. § 351(a)(2)(B).

### DEFENDANTS CAUSE ADULTERATION OF DRUGS WHILE HELD FOR SALE

15. Through the actions set forth above, Defendants cause drugs to become adulterated within the meaning of 21 U.S.C. § 351(a)(2)(B), while they are held for sale after shipment of one or more of their components in interstate commerce, in violation of 21 U.S.C. § 331(k).

### DEFENDANTS DISTRIBUTED ADULTERATED DRUGS IN INTERSTATE COMMERCE

16. Defendants distribute API to customers across the United States.  Defendants import the majority of the API it distributes from manufacturers or brokers outside the United States.  Thus, Defendants' activities satisfy the interstate commerce element of 21 U.S.C. § 331 and 21 U.S.C. § 331(k).  *See, e.g.*, 21 U.S.C. § 321(a)(2) ("The term 'interstate commerce' means (1) commerce between any State . . . and any place outside thereof"); *United States v. Food*, 2,998

Cases, 64 F.3d 984, 989 (5th Cir. 1995) (importation of goods into the U.S. satisfies statutory introduction into interstate commerce requirement).

### DEFENDANTS' HISTORY OF VIOLATIVE CONDUCT

17.     Defendants have a history of noncompliance with the Act, have failed to adequately remedy violations, and continue to violate the Act.

18.     At the close of the 2022 Inspections, FDA investigators issued FDA Forms 483 to Defendant Raje, collectively listing six inspectional observations (four at the Kentucky Facility and two at the Headquarters Facility), and discussed the observed deviations with LGM Pharma management, including Defendants Raje and Vengurlekar. FDA subsequently received responses to the FDA Forms 483 that did not adequately address the identified violations.

19.     FDA previously inspected the Kentucky Facility in 2018 (the "2018 Inspection"). At the close the 2018 Inspection, FDA investigators issued an FDA Form 483 listing 11 inspectional observations and discussed the observed deviations with LGM Pharma management, including Defendant Raje. FDA subsequently received a series of responses to the FDA Form 483 that did not adequately address the identified violations. The following are among the CGMP violations observed during the 2018 Inspection, many of which are the same as, or similar to, violations observed during the 2022 Inspections:

    A.     Failure to justify re-labeling of drugs. Defendants re-labeled API received from a foreign manufacturer as a different drug without investigating and documenting whether the re-labeling was justified.  Specifically, Defendants imported two shipments of the antiviral drug, cidofovir, from a broker in China, that were labeled as tranexamic acid, a blood-clotting agent.  Defendants re-labeled the product as cidofovir without any verification or testing of the content to confirm that the substance was, in fact, cidofovir.  Defendants distributed one shipment

of the API to several customers in the U.S.  This departure from CGMP was especially problematic because cidofovir and tranexamic acid cannot be distinguished upon visual inspection.

        B.      Failure to adequately investigate and resolve quality complaints.  For example, Defendants received multiple complaints from customers that lots of porcine thyroid powder API, used to treat underactive thyroid conditions, were OOS for lack of homogeneity, an issue that can lead to inconsistent potency, potentially resulting in sub-potent or super-potent individual doses.  Rather than quarantining the product pending an investigation into the cause for the OOS testing results, Defendants accepted returns of the rejected product from customers, stripped any indication the drug had been previously distributed, and shipped it to other customers. LGM has persisted in this non-compliant conduct as set forth in paragraph 13(A) above.

        C.      Failure to adequately qualify API suppliers.  For example, LGM Pharma imported API from suppliers placed on FDA Import Alerts, which inform FDA's field staff and the public that the agency has enough evidence to detain imported drugs that appear to be in violation of the FDCA, and imported two shipments of cidofovir API that were manufactured by a Chinese company that had not been evaluated and qualified by Defendants. As set forth in paragraph 13(C) above, LGM Pharma's supplier qualification procedures remain non-compliant.

        D.      Failure to have an adequate quality unit.  For example, individuals within the production and commercial units of LGM Pharma made quality control decisions, rather than personnel from an independent quality unit.  As set forth in paragraph 13(C) above, LGM Pharma remains non-compliant in this area, because the company's finance department, rather than

quality personnel, oversees relationships and transactions with many of LGM Pharma's API supply vendors.

   E. Failure to properly register suppliers with FDA.  For example, Defendants registered a Chinese company with FDA, incorrectly identifying it as the manufacturer of asparaginase API imported by Defendants.  In addition, LGM Pharma undertook this registration and listing without the foreign company's knowledge or authorization.  As set forth in paragraph 13(E) above, LGM Pharma continued its practice of inaccurate and unauthorized registration of suppliers after the 2018 Inspection.

  20. Based on the foregoing, despite repeated notifications, Defendants remain unable or unwilling to comply with the Act. Plaintiff believes that, unless restrained by this Court, Defendants will continue to violate the Act in the manner set forth above.

## PRAYER FOR RELIEF

  WHEREFORE, the United States respectfully requests that the Court:

  I. Issue an injunction restraining and enjoining Defendants, and each and all of their directors, officers, agents, employees, representatives, attorneys, successors, and assigns, and any and all persons in active concert or participation with any of them, pursuant to 21 U.S.C. § 332(a) and the inherent equitable authority of the Court, from doing or causing to be done any of the following acts:

   A. Violating 21 U.S.C. § 331(a), by introducing or delivering for introduction into interstate commerce drugs, as defined in 21 U.S.C. § 321(g), that are adulterated within the meaning of 21 U.S.C. § 351(a)(2)(B); and

    B. Violating 21 U.S.C. § 331(k), by causing drugs to become adulterated within the meaning of 21 U.S.C. § 351(a)(2)(B), while they are held for sale after shipment of one or more of their components in interstate commerce;

   II. Issue an injunction requiring Defendants to undertake actions to ensure that their methods and controls for receiving, labeling, holding, and/or distributing drugs, including quality controls, are established and operate in a manner that conforms with the Act and its regulations, and in a manner that has been found acceptable by FDA, and to ensure that Defendants' drugs are not adulterated within the meaning of 21 U.S.C. § 351(a)(2)(B); and

   III. Order that FDA be authorized pursuant to this injunction to inspect Defendants' place(s) of business and all records relating to the receiving, holding, and distributing of any drug to ensure continuing compliance with the terms of the injunction, with the costs of such inspections to be borne by Defendants at the rates prevailing at the time the inspections are accomplished.

DATED January 11, 2023

                                            Respectfully submitted,

**BRIAN BOYNTON**
**Acting Assistant Attorney General**
**Civil Division**

**ARUN G. RAO**
**Deputy Assistant Attorney General**

**AMANDA LISKAMM**
**Acting Director**
**Consumer Protection Branch**

**ALLAN GORDUS**
**Assistant Director**

By: _____
      **Ann Entwistle**
      **Rachael Doud**
      Trial Attorneys
      Consumer Protection Branch
      Civil Division
      United States Department of Justice
      P.O. Box 386
      Washington, DC  20044
      Tel.: 202.305-3630
      Fax: 202.514.8742
      Email: Ann.F.Entwistle@usdoj.gov
             Rachael.L.Doud@usdoj.gov

*Counsel for United States of America*

OF COUNSEL:

MARK J. RAZA
Chief Counsel
U.S. Food and Drug Administration

PERHAM GORJI

Deputy Chief Counsel, Litigation
U.S. Food and Drug Administration
TRACEY C. ALLEN
Associate Chief Counsel
Office of the Chief Counsel
U.S. Food and Drug Administration
10903 New Hampshire Avenue
Silver Spring, Maryland 20993-0002
Phone: 240-402-9862
Email: tracey.allen@fda.hhs.gov