# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF FLORIDA
# WEST PALM BEACH DIVISION

| | |
|---|---|
| **UNITED STATES OF AMERICA,**<br><br>　　**Plaintiff,**<br><br>　　v.<br><br>**LGM PHARMA LLC, a limited liability company,**<br><br>　　and<br><br>**PRASAD RAJE and SHAILESH VENGURLEKAR, individuals,**<br><br>　　**Defendants.** | CASE NO.: 9:23-cv-80040: |

## CONSENT DECREE OF PERMANENT INJUNCTION

Plaintiff, the United States of America, by its undersigned attorneys, having filed a Complaint for Permanent Injunction against LGM Pharma LLC, a limited liability company ("Corporate Defendant"), and Prasad Raje and Shailesh Vengurlekar (who was hired and assumed the position of Senior Vice President of Quality and Regulatory Affairs at Corporate Defendant in 2019), (collectively, "Defendants"), and Defendants having appeared and having consented to the entry of this Consent Decree of Permanent Injunction ("Decree") without contest, without admitting or deying the allegations in the Complaint, and before any testimony has been taken, and the United States of America having consented to this Decree;

IT IS HEREBY ORDERED, ADJUDGED, AND DECREED as follows:

1.　　This Court has jurisdiction over the subject matter and all parties to this action under 28 U.S.C. §§ 1331 and 1345, 21 U.S.C. § 332, and its inherent equitable authority.

2.  The Complaint for Permanent Injunction alleges a cause of action against Defendants under the Federal Food, Drug, and Cosmetic Act, 21 U.S.C. §§ 301-399f (the "Act").

3.  The Complaint alleges that Defendants are violating the Act, 21 U.S.C. § 331(a), by introducing or causing to be introduced, or delivering or causing to be delivered for introduction, into interstate commerce, articles of drug that are adulterated within the meaning of 21 U.S.C. § 351(a)(2)(B), in that the methods used in, or the facilities or controls used for, the manufacture, processing, packing, or holding of Defendants' drugs do not conform to or are not operated or administered in conformity with current good manufacturing practice to assure that such drugs meet the requirements of the Act as to safety and have the identity and strength, and meet the quality and purity characteristics, which they purport or are represented to possess.

4.  The Complaint alleges that Defendants are violating the Act, 21 U.S.C. § 331(k), by causing articles of drug to become adulterated within the meaning of 21 U.S.C. § 351(a)(2)(B), while the drugs are held for sale after shipment of one or more of their components in interstate commerce.

5.  For purposes of this Decree, the following definitions shall apply:

    A.  "Active pharmaceutical ingredient" or "API" shall have the meaning given to the term in 21 C.F.R. § 207.1;

    B.  "Associated Persons" shall mean each and all of Defendants' directors, officers, agents, employees, representatives, successors, assigns, attorneys, and any and all persons in active concert or participation with any of them;

    C.  "Defendants' facilities" and "facilities" shall refer to any locations, at or from which, Defendants directly or indirectly have responsibility over, authority for, or any other

responsible relationship to, the receiving, labeling, holding, and/or distribution of drugs, or are directly or indirectly engaged in any aspect of such activities;

        D.    "Drug(s)" shall have the meaning given to the term in 21 U.S.C. § 321(g), and shall include finished drug products, in-process materials, bulk drug substances, active pharmaceutical ingredients, and components thereof; and

        E.    "Days" shall refer to calendar days unless otherwise stated.

6.    Within ten (10) days after entry of this Decree, Defendants shall retain, at Defendants' expense, an independent person or persons (the "expert") who is without any personal or financial ties (including, but not limited to, prior employment by the Corporate Defendant), other than a retention agreement to satisfy the requirements of this provision, to Defendants; and who, by reason of background, training, education, or experience, is qualified to conduct inspections of Defendants' facilities to determine whether Defendants' methods and controls for receiving, labeling, holding, and/or distributing drugs, including quality controls, are established and operate in a manner that conforms with current good manufacturing practice requirements ("CGMP"), and to ensure that Defendants' drugs are not adulterated within the meaning of 21 U.S.C. § 351(a)(2)(B). Defendants shall notify FDA in writing of the identity and qualifications of the expert within five (5) days of retaining the expert. If Defendants replace such expert, Defendants shall notify FDA in writing of any such replacement within five (5) days after such replacement. Any replacement expert shall be qualified as described herein;

7.    Within thirty (30) days after being retained, the expert shall undertake and complete a comprehensive inspection of Defendants' facilities and the methods and controls used to receive, label, hold, and/or distribute drugs to determine whether Defendants' methods and controls are, at a minimum, in conformity with CGMP and adequate to prevent Defendants'

drugs from becoming adulterated within the meaning of 21 U.S.C. § 351(a)(2)(B). In conducting the inspection, including the actions set forth below in 7.A-C, and evaluating conformity with CGMP, the expert may consider any FDA regulations and/or guidance with respect to CGMP for receiving, labeling, holding, and/or distribution of drugs, including, but not limited to, 21 C.F.R. Parts 210 and 211 and FDA Guidance for Industry Q7 Good Manufacturing Practice Guidance for Active Pharmaceutical Ingredients. The expert will, at a minimum, undertake the following as part of the inspection described above:

  A. The expert shall, after reviewing all of FDA's inspectional observations from December 2018 to present, and Defendants' responses and implemented and/or proposed remediation procedures and/or corrective actions, develop a comprehensive, written quality assurance and control program ("QA/QC program") that is adequate to ensure continuous compliance with this Decree, the Act, and its implementing regulations, and that, at a minimum:

  (1) Includes written standard operating procedures ("SOPs") specifying the responsibilities and procedures applicable to QA/QC personnel and establishes procedures to ensure that such written SOPs are followed;

  (2) Requires that personnel managing, directing and conducting the QA/QC program are adequate in number, location, and qualifications (education, training, and experience, or a combination thereof) to perform the roles and responsibilities assigned to them and ensure that such personnel conduct their duties in conformance with applicable written SOPs and the requirements of this Decree;

  (3) Operates in coordination with, and under appropriate oversight of, QA/QC management at Defendants' facilities;

(4) Includes written SOPs to ensure that QA/QC management at Defendants' facilities: (i) is promptly notified of deviations and/or violations that could affect the safety, identity, strength, quality, and purity of drugs; (ii) participates in and/or monitors the implementation and verification of corrective actions to prevent future occurrences of such deviations and/or violations; and (iii) ensures that such written SOPs are continuously followed;

(5) Addresses compliance monitoring and trend analyses necessary to effectively manage compliance with this Decree, the Act, and its implementing regulations, records management systems, and internal audit procedures;

(6) Includes written SOPs for adequate internal auditing;

(7) Includes written SOPs to ensure that Defendants thoroughly investigate and document in a timely manner any complaint, return, adverse event, discrepancy, and/or deviation from procedure, and any associated trends in product quality deviations and/or problems, and that Defendants take any needed corrective actions in a timely manner;

(8) Includes written SOPs to ensure Defendants' employees receive adequate training on CGMP compliance, including prevention and correction of CGMP deviations;

(9) Includes written SOPs to ensure Defendants maintain accurate and complete traceability of drugs they receive, label, hold, and/or distribute;

(10) Includes written SOPs for re-labeling and/or supplemental labeling of drugs, that, at a minimum, include provisions prohibiting changes to the identity of a drug on a label without verification, including laboratory analyses;

(11) Includes written SOPs for qualification and disqualification of manufacturers, suppliers, and vendors of drugs that Defendants receive, label, hold, and/or

distribute, including, but not limited to, requiring on-site visits for initial qualification and ongoing monitoring;

(12)   Includes written SOPs that require Defendants to confirm that the identity of the manufacturer of any drug(s) received, labeled, held and/or distributed by Defendants is accurate;

(13)   Includes written SOPs concerning the drug registration and/or listing with FDA by Defendants (including any designation of Defendants as U.S. agents) that, at a minimum, require Defendants to obtain signed, written authorization directly from the manufacturer being registered before Defendants submit such drug registrations and/or listings with FDA (including any designation of Defendants as U.S. agents), and to maintain records of the authorization(s);

(14)   Includes written SOPs for recall procedures adequate to expeditiously and thoroughly implement and document recalls initiated by Defendants or FDA;

(15)   Includes written SOPs for adequate document control and record-keeping, including validation procedures for any electronic systems used for such purposes; and

(16)   Includes written procedures to ensure that SOPs are periodically re-evaluated so that they remain in continuous compliance with applicable laws and regulations;

B.   The expert shall review all drug registrations and/or listings with FDA which Defendants submitted or caused to be submitted (including any designations of Defendants or their Associated Persons as U.S. agents) to determine whether signed, written authorization for each such drug registration and/or listing exists, and provide a list to Defendants of any drug registrations and/or listings (including any designations of Defendants or

their Associated Persons as U.S. agents) for which signed, written authorization was not identified; and

        C.     The expert shall review all entities on Defendants' current list of approved manufacturers, suppliers, and/or vendors, and verify that each has met qualification acceptance criteria consistent with CGMP and adequate to prevent their drugs from becoming adulterated within the meaning of 21 U.S.C. § 351(a)(2)(B).

8.     Within thirty (30) days of being retained, Defendants' expert shall train Defendants' quality control unit and management on CGMP applicable to the receiving, labeling, holding, and/or distribution of drugs, including the QA/QC program SOPs discussed in paragraph 7.A, and certify that this training has been completed.

9.     Within thirty (30) days after completing the actions pursuant to paragraph 7, the expert shall certify in writing simultaneously to FDA and Defendants the following:

        A.     The expert has inspected Defendants' facilities and the methods and controls used to receive, label, hold, and/or distribute drugs and undertaken all other actions described in paragraph 7;

        B.     Whether all deviations from the requirements of this Decree, the Act, and its implementing regulations brought to Defendants' attention by FDA, the expert, and any other source have been corrected, including violations set forth in FDA's Inspectional Observations (Forms FDA 483) from all FDA inspections since 2018; and

        C.     Whether Defendants' facilities, methods and controls comply with this Decree, the Act, and its implementing regulations, including whether Defendants' methods and controls are adequate to prevent their drugs from becoming adulterated within the meaning of 21 U.S.C. § 351(a)(2)(B).

As part of this certification, Defendants shall ensure that the expert includes a detailed and complete report of the results of the inspection(s) conducted under paragraph 7.

10. Within thirty (30) days after receiving the expert's certification and report pursuant to paragraph 9, Defendants shall report to FDA in writing the actions they have taken to:

    A. Correct all deviations from the requirements of this Decree, the Act, and its implementing regulations, brought to Defendants' attention by FDA, the expert, or any other source;

    B. Ensure that Defendants' methods, and controls used to receive, label, hold, and/or distribute drugs are established, operated, and administered in conformity with this Decree, CGMP, the Act, and its implementing regulations;

    C. Obtain signed, written authorization from the manufacturer for each drug registration and listing (including any designation as U.S. agent) identified by the expert as missing after the expert's review pursuant to paragraph 7.B; in lieu of obtaining such written authorization, Defendants may withdraw the drug registration and/or listing;

    D. Remove any manufacturers, vendors, and/or suppliers whose qualification was not verified by the expert pursuant to paragraph 7.C; and

    E. Notify customers and complete recalls with respect to any violations, discrepancies, problems, or issues affecting the quality or identity of drugs imported and/or distributed by Defendants discovered during the expert's inspection under paragraph 7.

11. After receipt of the expert's certification and report (described in paragraph 9) and Defendants' report (described in paragraph 10), FDA representatives, without prior notice and

8

when FDA deems necessary, may inspect Defendants' facilities to determine whether Defendants comply with this Decree, CGMP, the Act, and its implementing regulations.

12. After FDA's inspection pursuant to paragraph 11 or, in the event FDA elects not to inspect, after FDA receives the expert's certification and report (described in paragraph 9) and Defendants' report (described in paragraph 10), FDA will notify Defendants in writing whether Defendants appear to be in compliance with this Decree, the Act, and its implementing regulations. In no circumstance, shall FDA's silence be construed as a substitute for written notification.

13. Upon entry of this Decree, Defendants and each and all of their directors, officers, agents, employees, representatives, successors, assigns, attorneys, and any and all persons in active concert or participation with any of them, who have received actual notice of this Decree by personal service or otherwise, are permanently restrained and enjoined under 21 U.S.C. § 332(a) from directly or indirectly doing or causing to be done any act that:

    A. Violates 21 U.S.C. § 331(a) by introducing or causing to be introduced, or delivering or causing to be delivered for introduction, into interstate commerce, any drug that is adulterated within the meaning of 21 U.S.C. § 351(a)(2)(B);

    B. Violates 21 U.S.C. § 331(k) by causing any drug to become adulterated within the meaning of 21 U.S.C. § 351(a)(2)(B), while such drug is held for sale after shipment of one or more of its components in interstate commerce; and

    C. Any act that results in the failure to implement and continuously maintain the requirements of this Decree.

14. Within thirty (30) days of receiving written notification from FDA under paragraph 12 of this Decree that Defendants appear to be in compliance with this Decree, the

Act, and its implementing regulations, Defendants shall retain an independent person who meets the criteria described in paragraph 6 and is qualified to assess Defendants' compliance, and who may be the same person(s) as the expert(s), to conduct audit inspections of Defendants' facilities, methods and controls (the "auditor").  Defendants shall notify FDA in writing of the identity and qualifications of the auditor within ten (10) days of retaining the auditor.  After the auditor is retained, audit inspections under this paragraph shall commence no less frequently than once every six (6) months for the first year thereafter and then no less frequently than once a year thereafter for the next three (3) years.  Audit inspections shall evaluate, at a minimum, Defendants' compliance with the requirements of this Decree, the Act, and its implementing regulations.

        A.     At the conclusion of each audit inspection described in this paragraph, Defendants shall direct the auditor to prepare a written audit report analyzing whether Defendants are complying with the requirements of this Decree, the Act, and its implementing regulations and identifying and describing in detail any deviations from those requirements. Beginning with the second audit report, the auditor shall also assess the adequacy of any corrective actions taken by Defendants to correct all previous audit report observations and all FDA 483 Observations, if any, since entry of this Decree, and include this information in the audit report.  The audit report shall be delivered contemporaneously to Defendants and FDA, as specified in paragraph 27, no later than fifteen (15) days after the date each audit inspection is completed.  In addition, Defendants shall maintain all audit reports in a separate file at the facility to which the report pertains and shall promptly make the reports available to FDA upon request.

B. If an audit report contains any observations indicating that Defendants are not in compliance with the requirements of this Decree, the Act, or its implementing regulations, Defendants shall correct those observations within thirty (30) days of receiving the report, unless FDA notifies Defendants in writing that a shorter period is necessary.

C. Immediately upon correction, Defendants shall submit documentation of corrective action to the auditor. Within fifteen (15) days of receiving such documentation, the auditor shall review the corrective action taken by Defendants. Within five (5) days of beginning that review, Defendants shall ensure that the auditor reports to FDA in writing whether each of the audit report observations has been fully corrected and, if not, which observations remain uncorrected.

15. If, at any time after entry of this Decree, FDA determines, based on the results of an inspection, investigation, analyses of samples, a report or data prepared or submitted by Defendants, any expert, and/or the auditor, or any other information, that Defendants have failed to comply with the provisions of this Decree, violated the Act and/or its implementing regulations, and/or that additional corrective actions are necessary to achieve compliance with this Decree, the Act, and/or its implementing regulations, FDA may, as and when it deems necessary, notify Defendants in writing of the noncompliance and order Defendants to take appropriate corrective action, including, but not limited to, ordering Defendants to immediately take one or more of the following actions:

A. Cease all receiving, labeling, holding, and/or distributing of any or all drugs;

B. Recall specified drugs received, labeled, held, and/or distributed by Defendants. Defendants shall initiate the recall(s) within twenty-four (24) hours of receiving

notice from FDA that a recall is necessary. Defendants shall, under FDA's supervision, destroy all drugs and components of drugs that are in Defendants' possession, custody, or control for which a recall was initiated. Defendants shall bear the costs of such recall(s), including the costs of destruction and the costs of FDA's supervision at the rates specified in paragraph 18. Defendants shall be responsible for ensuring that the destruction is carried out in a manner that complies with all applicable federal and state environmental laws, and any other applicable federal or state laws;

      C.      Submit additional reports or information to FDA;

      D.      Repeat, revise, modify, or expand any report(s) or plan(s) prepared pursuant to this Decree;

      E.      Immediately issue customer notifications with respect to the safety of a drug received, labeled, held, and/or distributed by Defendants;

      F.      Withdraw or correct any drug registration or listing information, and/or U.S. agent designation, with FDA, submitted by or on behalf of Defendants;

      G.      Consent to, authorize, or otherwise facilitate the disclosure of information held by a third party to FDA needed in connection with evaluating Defendants' compliance with this Decree, the Act, and/or its implementing regulations; and/or

      H.      Take any other corrective action(s) as FDA, in its discretion, deems necessary to protect the public health or bring Defendants into compliance with this Decree, the Act, and/or its implementing regulations.

This remedy shall be separate and apart from, and in addition to, any other remedy available to the United States under this Decree or under the law.

16. The following process and procedures shall apply when FDA issues an order under paragraph 15, except as provided in subparagraph D below.

A. Unless a different time frame is specified by FDA in its order, Defendants shall, within ten (10) days after receiving such order, notify FDA in writing that: (1) Defendants are undertaking or have undertaken corrective action, in which event Defendants shall describe the specific action taken or proposed to be taken and the proposed schedule for completing the action; or (2) Defendants do not agree with FDA's order. If Defendants notify FDA that they do not agree with FDA's order, Defendants shall explain in writing the basis for their disagreement; in so doing, Defendants may propose specific alternative actions and specific time frames for achieving FDA's objectives.

B. If Defendants notify FDA that they do not agree with FDA's order, FDA will review Defendants' notification and thereafter, in writing, affirm, modify, or withdraw its order, as FDA deems appropriate. If FDA affirms or modifies its order, it will explain the basis for the decision in writing. The written notice of affirmation or modification will constitute a final agency action.

C. If FDA affirms or modifies its order, Defendants shall, upon receipt of FDA's order, immediately implement the order (as modified, if applicable), and if they so choose, bring the matter before this Court on an expedited basis. While seeking Court review, Defendants shall continue to diligently implement FDA's order, unless the Court stays, reverses, vacates, or modifies FDA's order. Any review of FDA's decision under this paragraph shall be made in accordance with the terms set forth in paragraph 25 of this Decree.

D. The process and procedures set forth in paragraph 16(A)-(C) shall not apply to any order issued under paragraph 15 if such order states that, in FDA's judgment, the matter

raises significant public health concerns.  In such case, Defendants shall immediately and fully comply with the terms of that order.  Should Defendants seek to challenge any such order, they may petition this Court for relief while implementing the order.

Any cessation of operations or other action described in paragraph 15 shall be implemented immediately and fully by Defendants and shall continue until Defendants receive written notification from FDA that Defendants appear to be in compliance with this Decree, CGMP, the Act, and its implementing regulations, and that Defendants may resume operations. Upon Defendants' written request to resume operations, FDA will determine whether Defendants appear to be in such compliance, and, if so, issue to Defendants a written notification permitting, as appropriate, resumption of operations.  In no circumstance shall FDA's silence be construed as a substitute for written notification.  The costs of FDA inspections, sampling, testing, travel time, and subsistence expenses to implement the remedies set forth in this paragraph and paragraph 15 shall be borne by Defendants at the rates specified in paragraph 18.  This provision shall be separate and apart from, and in addition to, all other remedies available to FDA.

17. Representatives of FDA shall be permitted, without prior notice and as and when FDA deems necessary, to make inspections of Defendants' operations and facilities, collect samples, and, without prior notice, take any other measures necessary to monitor and ensure continuing compliance with the terms of this Decree.  During such inspections, FDA representatives shall be permitted access to Defendants' operations and facilities including, but not limited to, all buildings, equipment, materials and products, containers, labeling, and other promotional material therein; to take photographs and make video recordings; to take samples, without charge to FDA, of materials and products, containers and packaging material therein, labeling, and other promotional material; and to examine and copy all records relating to the

receipt, holding, and distribution of any and all drugs and their components. Defendants and Associated Persons are prohibited from destroying, discarding, altering, transferring, or otherwise making unavailable any documents and records in electronic format or otherwise within the custody or control of Defendants or Associated Persons. The inspections shall be permitted upon presentation of a copy of this Decree and appropriate credentials. The inspection authority granted by this Decree is separate from, and in addition to, the authority to conduct inspections under the Act, 21 U.S.C. § 374.

18. Defendants shall pay all costs of FDA's supervision, inspections, investigations, analyses, examinations, and reviews that FDA deems necessary to evaluate Defendants' compliance with this Decree, including the domestic and foreign travel incurred by specialized investigatory and expert personnel, at the standard rates prevailing at the time the costs are incurred. As of the date that this Decree is signed by the parties, these rates are: $105.46 per hour and fraction thereof per representative for inspection work; $126.24 per hour or fraction thereof per representative for analytical or review work; $0.59 per mile for travel by automobile; government rate or the equivalent for travel by air or other means; and the published government per diem rate or the equivalent for the areas in which the inspections are performed per representative and per day for subsistence expenses, where necessary. If the standard rates applicable to FDA supervision of court-ordered compliance are modified, these rates shall be increased or decreased without further order of the Court.

19. Within seven (7) days after entry of this Decree, Defendants shall post a copy of this Decree on a bulletin board in the employee common areas at Defendants' facilities, and publish the Decree on any internal available website maintained and/or controlled by

Defendants. Defendants shall ensure that the Decree remains posted as described herein for as long as the Decree remains in effect.

20. Within ten (10) days after entry of this Decree, Defendants shall hold a general meeting, or series of smaller meetings for employees at each of their facilities, at which they shall describe the terms and obligations of this Decree. Defendants shall provide to FDA, within twenty (20) days after entry of this Decree, an affidavit signed by a person with personal knowledge of the facts stating the fact and manner of compliance with this paragraph and identifying the names and positions of all meeting attendees and attaching a copy of the meeting sign-in sheet(s).

21. Within seven (7) days after entry of this Decree, Defendants shall provide a copy of this Decree, by personal service or certified mail (restricted delivery, return receipt requested), to each and all of their Associated Persons. Within thirty (30) days after entry of this Decree, Defendants shall provide to FDA an affidavit of compliance, signed by a person with personal knowledge of the facts, stating the fact and manner of compliance with the provisions of this paragraph and identifying the names, addresses, and positions of all persons who have received a copy of this Decree pursuant to this paragraph, and attaching a copy of the executed certified mail return receipts. Within seven (7) days of receiving a request from FDA for any information or documentation that FDA deems necessary to evaluate Defendants' compliance with this paragraph, Defendants shall provide such information or documentation to FDA.

22. If Defendants become associated with any additional Associated Person(s) at any time after entry of this Decree, Defendants immediately shall provide a copy of this Decree, by personal service or certified mail (restricted delivery, return receipt requested), to such Associated Person(s). Within thirty (30) days of each instance Defendants become associated

with any additional Associated Person(s), Defendants shall provide to FDA an affidavit stating the fact and manner of their compliance with this paragraph, identifying the names, addresses, and positions of all Associated Persons who received a copy of this Decree pursuant to this paragraph, and attaching a copy of the executed certified mail return receipts. Within seven (7) days of receiving a request from FDA for any information or documentation that FDA deems necessary to evaluate Defendants' compliance with this paragraph, Defendants shall provide such information or documentation to FDA.

23. Defendants shall notify FDA at least fifteen (15) days before any change in ownership, character, or name of any of Defendants' businesses, including incorporation, reorganization, relocation, bankruptcy, dissolution, assignment, or sale resulting in the emergence of a successor corporation, the creation or dissolution of subsidiaries, or any other change in the corporate structure, responsibility of Defendants, or identity of Defendants' business(es), or in the sale, lease, or assignment of any business assets, such as buildings, equipment, or inventory, that may affect obligations arising out of this Decree. Defendants shall provide a copy of this Decree to any potential successor or assign at least fifteen (15) days before any sale or assignment. Defendants shall furnish FDA with an affidavit of compliance with this paragraph no later than ten (10) days prior to any such assignment or change in ownership.

24. If Defendants fail to comply with any provision of this Decree, the Act and/or its implementing regulations, including any time frame imposed by this Decree, then Defendants shall pay to the United States of America: five thousand dollars ($5,000) in liquidated damages for each day such violation continues; an additional sum of five thousand dollars ($5,000) in liquidated damages for each violation; and further additional sum equal to the value of drugs that have been received, labeled, held, and/or distributed in violation of this Decree, the Act, and/or

its implementing regulations. The remedy in this paragraph shall be in addition to any other remedies available to the United States under this Decree or the law.

25. Defendants shall abide by the decisions of FDA, and FDA's decisions shall be final. All decisions conferred upon FDA in this Decree shall be vested in FDA's discretion and, to the extent that these decisions are subject to review, shall be reviewed by this Court under the arbitrary and capricious standard set forth in 5 U.S.C. § 706(2)(A). Review by the Court of any FDA decision rendered pursuant to this Decree shall be based exclusively on the written record before FDA at the time of the decision. No discovery shall be taken by either party.

26. Should the United States of America bring, and prevail in, a contempt action to enforce the terms of this Decree, Defendants shall, in addition to other remedies, pay all attorneys' fees and costs, travel expenses incurred by attorneys and witnesses, expert witness fees, investigational and analytical expenses, court costs, and any other costs or fees incurred by the United States in bringing such an action.

27. All notifications, correspondence, and communications to FDA required by the terms of this Decree shall be addressed to the Director of FDA's Division of Pharmaceutical Quality Operations III, at ORAPHARM3_RESPONSES@fda.hhs.gov.

28. This Court retains jurisdiction of this action and the parties thereto for the purpose of enforcing and modifying this Decree and for the purpose of granting such additional relief as may be necessary or appropriate.

IT IS SO ORDERED, this _____ day of _____, 2023.

_____
UNITED STATES DISTRICT JUDGE

The undersigned hereby consent to the entry of the foregoing Decree.

For Plaintiff

OF COUNSEL:

MARK J. RAZA
Chief Counsel
U.S. Food and Drug Administration

PERHAM GORJI
Deputy Chief Counsel, Litigation
U.S. Food and Drug Administration

TRACEY C. ALLEN
Associate Chief Counsel
Office of the Chief Counsel
U.S. Food and Drug Administration
10903 New Hampshire Avenue
Building 31, Room 4529B
Silver Spring, MD 20993-0002
240-402-9862

BRIAN BOYNTON
Acting Assistant Attorney General
Civil Division

AMANDA LISKAMM
Acting Director
Consumer Protection Branch

_/s/_____
ANN ENTWISTLE
RACHAEL DOUD
Trial Attorneys
Consumer Protection Branch
Department of Justice, Civil Division
P.O. Box 386
Washington, D.C. 20044
Tel: 202-305-3630
      202-305-4499
Email: Ann.F.Entwistle@usdoj.gov
        Rachael.L.Doud@usdoj.gov

19

For Defendants

_____
PRASAD RAJE,
Individually and on behalf of
LGM PHARMA LLC

*Shailesh Vengurlekar* Digitally signed by Shailesh Vengurlekar
Date: 2023.01.05 09:01:32 -08'00'
_____
SHAILESH VENGURLEKAR,
Individually

_____
Eric H. Sussman
Barnes & Thornburg LLP
One North Wacker Drive, Suite 4400
Chicago, IL 60606
(312) 214-4599

Lee H. Rosebush
Baker & Hostetler LLP
Washington Square, Suite 1100
1050 Connecticut Ave, N.W.
Washington, DC 20036

Attorneys for Defendants